**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**TIMOTHY SPROTT, et al.,**                    CASE NO. 3:22 CV 146

            Plaintiffs,

            v.                                               JUDGE JAMES R. KNEPP II

**OTTAWA HILLS LOCAL SCHOOL**
**DISTRICT, et al.,**
                                                          **MEMORANDUM OPINION AND**
            Defendants.                          **ORDER**


### INTRODUCTION

Currently pending before the Court is a Motion for Judgment on the Pleadings by Defendants Nicole Silvers, James Kincaid, Kristin Johnson, Kay Cocke, Gerry Davis, Julie Visser, Darrin Broadway, Noreen Hanlon, Elizabeth Puskala, and Lauren Hurst (hereinafter "Teacher Defendants"). (Doc. 61). Plaintiffs oppose (Doc. 64), and the Teacher Defendants reply (Doc. 71). Jurisdiction in this case is proper under 28 U.S.C. §§ 1331 and 1367.

For the reasons stated below, the Court grants in part and denies in part the Teacher Defendants' Motion.

### BACKGROUND

This case arises out of Defendant Ronald Stevens' abuse of Plaintiffs while he was an employee of the Ottawa Hills Local School District. In September 2021, Stevens was convicted of thirty-one felony counts of sexual abuse and/or rape of Ottawa Hills Local School District students, including Plaintiffs; he was subsequently sentenced to 101 years in prison. *Id.* at ¶ 188. Plaintiffs bring suit, alleging claims against the Ottawa Hills Local School District, the Ottawa

Hills Local School District Board of Education, Ronald Stevens, Kristie Stevens, several Ottawa Hills School District administrative employees ("Administration Defendants"), and several Ottawa Hills School District teachers.

The following facts are alleged in Plaintiffs' First Amended Complaint as it pertains to the Teacher Defendants and the pending motion. (Doc. 33).

Stevens was a maintenance employee at Ottawa Hills Local School District; his sole job related to building maintenance and custodial duties. *Id.* at ¶¶ 1, 94. He was hired as a janitor in 2001, promoted to Maintenance Person in 2007, and promoted to Maintenance Director in January 2017. *Id.* at ¶¶ 87-88, 92. He had no educational or student supervision duties, nor did he have "the education, training, certifications, or qualifications required to educate, tutor, or supervise students . . . including as a coach, which he was not." *Id.* at ¶ 93; *see also id.* at ¶ 87. Stevens's wife, Defendant Kristie Stevens, was a schoolteacher for Defendant School District. *Id.* at ¶¶ 89-90.

The Amended Complaint asserts the Administration Defendants offered, asked, arranged, recommended, and/or pressured Timothy Sprott's mother to sign paperwork giving Stevens guardianship rights over Sprott[1] and giving Stevens access to Sprott's academic records. *Id.* at ¶¶ 3(c), 24(g), 30-31, 56-57, 126, 131-32, 149, 164, 168, 235(f). It further suggests the Teacher Defendants' awareness of the arrangement. *Id.* at ¶ 168 (Teacher Defendants, among others, "facilitated" Stevens "legal guardianship over" Sprott). These documents, which the Teacher Defendants attach to their motion, are both signed by Sprott's mother, Michelle Sprott. *See* Doc. 61-1. The first is a Temporary Custody Agreement, signed February 14, 2018. *Id.* at 1. It states Stevens has temporary custody and permission "to care for" Sprott "in his . . . home and to apply

---

1. Both Timothy Sprott and James Sprott are Plaintiffs in the instant case. Unless otherwise indicated, references to "Sprott" herein reference Plaintiff Timothy Sprott.

for, consent to, or otherwise obtain any medical treatment or any economical, social, educational, or other services" the child may need. *Id.* The second document is a Temporary Guardianship Agreement, signed November 9, 2018. *Id.* at 2. It grants temporary guardianship of Sprott to Stevens "for as long as necessary", beginning November 10, 2018. *Id.*

The Amended Complaint alleges Stevens sexually abused Timothy Sprott "[u]nder the guise of tutoring" him from 2017 to 2019. *Id.* at ¶¶ 58-60. Stevens was not qualified to act as a tutor, nor "was there any semblance or trappings of a legitimate tutoring program or initiative" by which Stevens would tutor Sprott. *Id.* at ¶ 127-28; *see also id.* at 128 ("There was no written plan, curriculum, schedule, progress reports or notes, goals, objectives, or any of the other necessary documents and materials that accompany a legitimate tutoring initiative or program."). This abuse occurred at Stevens's offices in the District's Elementary and Junior/Senior High Schools, the Junior/Senior High School boys' locker room, Stevens's home, and Sprott's home. *Id.* at ¶ 63.

The Amended Complaint further alleges Stevens sexually abused James Sprott in 2019 at Stevens' home and in Stevens' car on school grounds. *Id.* at ¶¶ 70-75. And it asserts Stevens abused Plaintiff Benjamin Burke during the 2019 school year at Stevens' home. *Id.* at ¶¶ 78-83.

The specific factual allegations regarding the individual Teacher Defendants in the Amended Complaint are as follows:

Silvers, Kincaid, Johnson, Cocke, Davis, and Visser

Silvers, Kincaid, Johnson, Cocke, Davis, and Visser "permitted" Stevens "to repeatedly remove and retrieve [Sprott] from class." *Id.* at ¶¶ 36-40, 42; *Id.* at ¶ 162 (Silvers, Kincaid, Johnson, Cocke, and Visser "allowed" Stevens "to repeatedly remove [Sprott] from class without any stated or apparently legitimate reason"); *Id.* at ¶ 134 (Davis "allowed" Stevens "to remove

3

[Sprott] from class multiple times per week"). The Amended Complaint asserts that based on each's observations of [Stevens and Sprott], these Defendants "should have suspected that District students, including the Plaintiffs, were suffering, or faced a threat of suffering, sexual abuse" by Stevens. *Id.* at ¶¶ 36-40, 42.

Puskala

Puskala "permitted" Stevens to "repeatedly remove and retrieve, or excuse" Sprott from class. *Id.* at ¶ 41. Puskala "repeatedly allowed [Sprott] to miss labs because he was 'meeting' with" Stevens. *Id.* at ¶ 135. Sprott told Puskala "that he was unable to attend labs because 'he needed to meet with Donnie'"; Puskala "failed to report this improper and unexcused absence, and/or was not properly trained in identifying such an inappropriate action." *Id.* at ¶ 130. The Amended Complaint asserts that "[b]ased on her observations of [Stevens and Sprott], Puskala "should have suspected that District students, including the Plaintiffs, were suffering, or faced a threat of suffering, sexual abuse" by Stevens. *Id.* at ¶ 41.

Broadway and Hanlon

Broadway "received, and subsequently dismissed, repeated complaints regarding [Stevens'] inappropriate behavior with students including the Plaintiffs." *Id.* at ¶ 43. Hanlon "received, and subsequently dismissed, at least one complaint regarding [Stevens'] inappropriate behavior with students." *Id.* at ¶ 44.

In December 2018, Defendant Dewire[2], a former student, met with Hanlon and Patterson[3] and told them Stevens 'was creeping on one of [her] girlfriends when [they] were students [at Ottawa Hills.]' and that 'Donnie made a lot of people uncomfortable'." *Id.* at ¶¶ 152-53. Hanlon

---

2. According to the Amended Complaint, Defendant Abigail Dewire was a former student and schoolteacher within the Ottawa Hills School District. (Doc. 33, at ¶¶ 45, 152).
3. Defendant Jackie Patterson was a District Vice Principal. (Doc. 33, at ¶ 30).

or Patterson told Broadway about Dewire's statements and concerns. *Id.* at ¶ 154. Dewire stated she 'was listened to, but no change was made or pursued.'" *Id.* at ¶ 155. Neither Hanlon nor Broadway acted on, investigated, or reported Dewire's concerns. *Id.* at ¶ 157.

In 2019, after the news of Stevens' sexual abuse of Plaintiffs became public, Dewire said to Hanlon: "'Pedophiles are among us and this is real.' 'It's our responsibility as adults to talk to kids and prevent this. The cycle of abuse needs to end. It's frustrating because I came to you and [Defendant Patterson] because I'm comfortable with both of you and I was hoping you might talk to [Defendant McMurray[4]] about how this is a big issue and change needs to happen. It's frustrating because this was preventable, and I literally talked to you about this.'" *Id.* at ¶ 156.

The Amended Complaint assets that "[b]ased on his observations of" Stevens, Broadway "should have suspected that District students, including the Plaintiffs, were suffering, or faced a threat of suffering, sexual abuse by" Stevens. *Id.* at 43. And "[b]ased on her direct knowledge of" Stevens's "inappropriate conduct", Hanlon "should have reasonably suspected that District students, including the Plaintiffs, were suffering, or faced a threat of suffering, sexual abuse by" Stevens. *Id.*

Hurst

Hurst, "[b]ased on her observations of [Stevens] and [Sprott] . . . suspected that District students, including the Plaintiffs, were suffering, or faced a threat of suffering, sexual abuse" by Stevens. *Id.* at ¶ 46. She "specifically complained to school officials that [Sprott's] performance in her class was suffering, and on information and belief, expressed concerns regarding [Sprott's] relationship with" Stevens. *Id.* In early 2018, Sprott "began doing worse in school"; Hurst "discussed her concerns regarding" Sprott's "poor performance in English with Defendant Jackie

---

4. Defendant Benjamin McMurray is identified as an Ottawa Hills School District Principal. (Doc. 33, at ¶ 31).

Patterson. *Id.* at ¶ 129. The Amended Complaint further alleges, on information and belief, that "on at least one occasion", Hurst expressed her concerns regarding [Sprott's] relationship with [Stevens]" to the District, Board, and Administration Defendants. *Id.* "[D]espite this specific knowledge and her reasonable suspicion that [Sprott] was suffering, or faced a threat of suffering, sexual abuse, or other harm by" Stevens, Hurst "did not report" the "known and/or reasonably suspected abuse to the appropriate authorities." *Id.* at ¶ 46.

<u>All Teacher Defendants</u>

The Amended Complaint further alleges the Teacher Defendants "allowed" Stevens to remove Plaintiffs from class and mentor them both on and off school grounds. *Id.* at ¶¶ 165-67. They "facilitated" Stevens's legal guardianship over Sprott. *Id.* at ¶ 168. "Releasing students from class in the middle of a school day" to Stevens' care "violated District policies and procedures". *Id.* at ¶ 171.

The Teacher Defendants "regularly observed" Stevens "in the hallway with students, including Plaintiffs, in the middle of a school day when these students should have been in class, and "also observed" Stevens "transporting boys, including Plaintiffs, off school property during school hours – again, when these students should have been in class." *Id.* at ¶¶ 172-73. It further asserts the Teacher Defendants "permitted" Stevens to "escort students, including certain Plaintiffs, to his office(s) where he would perpetuate abuse" and "permitted" Stevens "to transport students, including certain Plaintiffs from school property, during school hours, where he would perpetuate abuse." *Id.* at ¶ 235.

<u>Causes of Action</u>

The Amended Complaint in this case asserts two claims for relief against the Teacher Defendants: (1) a Fourteenth Amendment state created danger claim under 42 U.S.C. § 1983.

6

(Doc. 33, at ¶¶ 231-39) (Third Claim for Relief); and (2) a violation of Ohio Revised Code § 2151.421 for failure to satisfy the duty to report suspected abuse, *id.* at ¶¶ 293-97 (Tenth Claim for Relief).

## STANDARD OF REVIEW

Rule 12(c) motions for judgment on the pleadings are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The pleadings must demonstrate sufficient factual matter that, when taken as true, states a claim which is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 470 (2007). A court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Twombly*, 550 U.S. at 555 (a "formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

The Teacher Defendants move to dismiss both claims brought against them. Plaintiffs "do not oppose" the motion as it relates to the Fourteenth Amendment claim, but oppose it as to the Ohio state law failure to report claim. *See* Doc. 64. For the reasons discussed below, the Court dismisses the § 1983 claim, but finds the failure to report claim may proceed at this stage.

<u>Guardianship Documents</u>

Preliminarily, the Court addresses what it may consider relative to this motion. Defendants attach to their motion two documents signed by Sprott's mother, Michelle Sprott. (Doc. 61-1). The first is a Temporary Custody Agreement, signed February 14, 2018. *Id.* at 1. It states Stevens has temporary custody and permission "to care for" Sprott "in his . . . home and to apply for, consent to, or otherwise obtain any medical treatment or any economical, social, educational, or other services" the child may need. *Id.* The second document is a Temporary Guardianship Agreement, signed November 9, 2018. *Id.* at 2. It grants temporary guardianship of Sprott to Stevens "for as long as necessary", beginning November 10, 2018. *Id.*

Defendants contend the Court can consider these documents at this stage because they are referred to in the Complaint and "central" to Plaintiffs' claims. (Doc. 61, at 9 and n.4). Plaintiffs do not explicitly object to consideration of the documents, but assert "the existence of such an agreement has no bearing on whether a teacher should recognize and report a threat of sexual abuse." (Doc. 64, at 16). They contend that "while the existence of a temporary custody agreement could potentially be a relevant circumstance for the jury to consider, it in no way obviates a teacher's duty to report a threat of sexual abuse, nor does it extinguish Plaintiffs' failure to report claims as a matter of law." *Id.*

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *See Caraway v. CoreCivic of Tenn.*, *LLC*, 2024 WL 1546522, at *6 (6th Cir.). However, a "court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims

contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

The Amended Complaint references the guardianship arrangement and corresponding paperwork. *See* Doc. 33, at ¶¶ 3(c), 24(g), 30-31, 56-57, 149, 164, 168, 235(f). As to the Administration Defendants, it asserts, they offered, asked, arranged, recommended, and or/pressured Sprott's mother to sign the documents. *Id.* at ¶¶ 3(c), 24(g), 30-31, 56-57, 149, 164, 168, 235(f). It further suggests the Teacher Defendants' awareness of the arrangement. *Id.* at ¶ 168 (Teacher Defendants, among others, "facilitated" Stevens "legal guardianship over" Sprott).

The Court finds it can consider the attached documents and the guardianship arrangement "as referred to in the complaint and are central to the claims contained therein." *Gavitt*, 835 F.3d at 640. The documents themselves, however, add little to the analysis here, which is centered on what a reasonable teacher in the Teacher Defendants' position would do, and the Amended Complaint does not allege those Defendants had seen or knew the precise details of the documents.

## 42 U.S.C. § 1983 Fourteenth Amendment State Created Danger Claim

The Teacher Defendants move to dismiss Plaintiff's Fourteenth Amendment state created danger claim brought under 42 U.S.C. § 1983. They argue (1) none of the Teacher Defendants committed a constitutional violation because none engaged in an affirmative act which created or increased the risk to Plaintiffs, (2) no Teacher Defendant acted with a sufficiently culpable mental state to meet the deliberate indifference standard; and (3) no clearly established law informed the teachers that any conduct was constitutionally illegal and thus they are entitled to qualified immunity. (Doc. 61, at 18-30). In response, Plaintiffs simply state that they "do not oppose the Motion as it relates to Plaintiffs' Fourteenth Amendment state created danger claims

asserted against the Teacher Defendants." (Doc. 64, at 1). Defendants in reply ask the Court to not find the claims abandoned but "make the express legal determinations which entitle the Teacher Defendants to judgment in their favor." (Doc. 71, at 5). They contend this is appropriate because the allegations in the Amended Complaint "have created a serious potential of damage to the Teacher Defendants' personal reputations and professional careers" and such findings "will, to some degree, rectify the harm needlessly inflicted". *Id.*

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 569 U.S. 398, 408 (2013). "'[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation on federal-court jurisdiction to actual cases or controversies.'" *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)); *see also Flast v. Cohen*, 392 U.S. 83, 94-95 (1968) (explaining that "limit[ing] the business of federal courts to questions presented in an adversary context . . . define[s] the role assigned to the judiciary in a tripartite allocation of power"). When a party abandons an issue raised, there is no live controversy left to adjudicate. *See Remus Joint Venture v. McAnally*, 116 F.3d 180, 185 (6th Cir. 1997) ("[O]ur decision that no Article III case or controversy exists rests on a simple fact: plaintiffs voluntarily have abandoned an argument that was necessary for them to prevail in this federal court action."). The Court declines Defendants' invitation to issue a substantive ruling on this claim, which Plaintiffs have abandoned. The § 1983 Fourteenth Amendment state created danger claim against the Teacher Defendants is dismissed with prejudice.

Duty to Report – Ohio Revised Code § 2151.421

The Teacher Defendants also move for judgment on Count Ten, the Ohio law failure to report claim. (Doc. 61, at 30-33). They contend Plaintiffs' Amended Complaint does not allege

sufficient facts to plausibly allege a reasonable teacher in a situation similar to that of any individual Teacher Defendant would have known or suspected abuse. Plaintiffs oppose. They respond that whether any individual Teacher Defendant's duty to report was triggered "is a highly fact intensive inquiry that cannot be resolved at the pleading stage." (Doc. 64, at 6). They additionally contend that dismissal without "the submission of expert testimony about 'the necessary training or skill to detect the symptoms of child abuse' possessed by teachers, would be inappropriate." *Id.* at 12-13 (quoting *Yates v. Mansfield Bd. of Educ.*, 102 Ohio St. 3d 205, 211 (Ohio 2004)).

> The relevant statute provides:
>
> (A)(1)(a) No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age . . . has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division.

Ohio Rev. Code Ann. § 2151.421(A). This reporting duty applies to schoolteachers. *See id.* § 2151.421(A)(1)(b). This standard is an objective, not subjective, one. *See Kraynak v. Youngstown City Sch. Dist. Bd. of Educ.*, 118 Ohio St. 3d 400, 403 (2008). "Whoever violates division (A) of this section is liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made." Ohio Rev. Code § 2151.421(M).[5]

The parties first dispute whether a court can determine if a teacher has "reasonable cause to suspect" abuse triggering a duty to report under the Ohio statute as a matter of law at the pleadings stage or if it is necessarily a question of fact for a jury. The Teacher Defendants argue

---

5. The Amended Complaint cites Ohio Revised Code § 2151.421(N) as the basis for damages under the statute (Doc. 33, at ¶ 297); this appears to reference the previous version of the statute. The current subsection addressing damages is § 2151.421(M).

that even taking the facts of the Amended Complaint as true, no teacher would have had "reasonable cause to suspect" abuse. Plaintiffs respond that "what a reasonable teacher would do under a set of circumstances is a question of fact for the jury" and "dismissal of Plaintiffs' failure to report claims against the Teacher Defendants, before the facts are fully developed in discovery, including the submission of expert testimony about 'the necessary training or skill to detect the symptoms of child abuse' possessed by teachers, would be inappropriate." (Doc. 64, at 12-13).

Plaintiffs do not allege any individual Teacher Defendant had actual knowledge of Stevens's abuse of Sprott or any other Plaintiff or other student. The standard to be applied is the objective statutory one: "has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child . . . . has suffered or faces a threat of suffering" abuse. Ohio Rev. Code § 2151.421(A)(1)(a).

The Court agrees with the Teacher Defendants that the reasonableness standard contained in the statute does not prevent a court, at least in the abstract, from determining this question as a matter of law either at the pleading stage or the summary judgment stage. *See, e.g.*, *Werner v. Young*, 2023 WL 639103 (6th Cir.) (affirming dismissal of action under a similar Tennessee statute where plaintiff "merely recited the elements of the cause of action" but did not allege supporting facts); *see also Doe v. Skaggs*, 127 N.E.3d 493 (Ohio Ct. App. 2018) (upholding grant of summary judgment where "[t]here is no evidence in this record that Skaggs or Rine had any reason to suspect the abuse.").[6] And the Court further agrees with the Teacher Defendants

6. Plaintiffs' citation of a single sentence in *Yates v. Mansfield Bd. of Educ.*, 102 Ohio St. 3d 205, 216-17 (Ohio 2004) that "[t]he determination regarding whether the duty to report arose is a question of fact", does not dictate a contrary conclusion. This statement, in a concurring opinion, does not change the general principles that the Court must examine the facts alleged in a complaint at the pleadings stage and assess whether a claim is plausibly pled or take the facts in

that the statements in the Amended Complaint that each teacher "should have suspected that District students, including the Plaintiffs, were suffering, or faced a threat of suffering, sexual abuse" by Stevens are legal conclusions, not factual statements, and thus not entitled to a presumption of truth.

The parties next dispute whether claims against the Teacher Defendants could be dismissed before the development of expert testimony, citing the following language from the Ohio Supreme Court in *Yates v. Mansfield Board of Education*:

> Because abused and neglected children lack the ability to ameliorate their own plight, R.C. 2151.421 imposes mandatory reporting duties on "those with special relationships with children, such as doctors and teachers." *Campbell,* supra, 92 Ohio St.3d at 342, 750 N.E.2d 539. See, also, R.C. 2151.421(A)(1)(b). These persons, when acting in their official or professional capacity, hold unique positions in our society. ***They are not only the most likely and qualified persons to encounter and identify abused and neglected children, but they are often directly responsible for the care, custody, or control of these children in one form or another.*** See Annotation, supra, 73 A.L.R.4th at 829; Besharov, supra, 23 Vill.L.Rev. at 466–468; Ramsey & Lawler, The Battered Child Syndrome (1974), 1 Pepperdine L.Rev. 372, 381. Those persons who do not have regular contact with children and ***who lack the necessary training or skill to detect the symptoms of child abuse*** are permitted, but not required, to report their knowledge or suspicions concerning abuse or neglect. See R.C. 2151.421(B).

102 Ohio St. 3d 205, 211 (Ohio 2004) (emphasis added). But Plaintiffs point to no caselaw suggesting that this dicta added an additional requirement that is subject to expert testimony. And, indeed, the Ohio Supreme Court later characterized this wording as merely describing those listed as mandatory reporters in § 2151.421(A)(1)(b) as follows:

> In *Yates v. Mansfield Bd. of Edn.,* 102 Ohio St.3d 205, 2004-Ohio-2491, 808 N.E.2d 861, ¶ 30, we noted that R.C. 2151.421 imposes mandatory reporting duties on teachers and others listed in the statute because they are among the "most likely and qualified persons to encounter and identify abused and neglected children" and have "the necessary training or skill to detect the symptoms of child

---

the light most favorable to a plaintiff at the summary judgment stage and determine if they state a violation of a statute.

13

abuse."

*State v. Clark*, 137 Ohio St. 3d 346, 349–50 (Ohio 2013), *rev'd and remanded on other grounds by*, 576 U.S. 237 (2015). That is, the wording cited is merely a description of the reasoning behind the list of individuals in Ohio Revised Code § 2151.421(A)(1)(b) who are required to report. *See also Kraynak v. Youngstown City Sch. Dist. Bd. of Educ.*, 172 Ohio App. 3d 545, 555 (Ohio Ct. App. 2007) (finding an expert "may have been allowed to testify as to what she teaches regarding the mandatory duty to report" but "should have been prevented from editorializing about the alleged contents of the statute and testifying as to its contents" because "[t]he statutory language in R.C. 2151.421 speaks for itself.").

The Court is therefore left with the question of what the Amended Complaint alleges each teacher knew, and whether it is sufficient to plausibly allege a violation of the statute. Plaintiffs' opposition brief conflates various facts that various teachers knew (and includes many facts that the Amended Complaint *nowhere alleges* the teachers knew). The Court agrees with the Teacher Defendants, however, that the allegations against each Defendant must be analyzed individually because the standard is one of a "reasonable person in a similar position".

With that background, the Amended Complaint alleges (albeit fairly vaguely and generally) that all Teacher Defendants "authorized and allowed" Stevens to remove Plaintiffs from class and mentor them both on and off school grounds (Doc. 33, at ¶¶ 165-67), "regularly observed" Stevens "in the hallway with students, including Plaintiffs, when students should have been in class"; "also observed" Stevens "transporting boys, including Plaintiffs, off school property during school hours" when the students should have been in class; and "permitted" Stevens to "escort students, including certain Plaintiffs" to his office. *Id.* at ¶¶ 172-73, 235.

It specifically alleges that Silvers, Kincaid, Johnson, Cocke, and Visser "permitted" or "allowed" Stevens "to repeatedly remove and retrieve" Sprott from class "without any stated or legitimate reason" (Doc. 33, at ¶¶ 36-39, 42, 162). Davis "permitted" Stevens "to repeatedly remove and retrieve" Sprott from class and during the 2017-2018 school year and "allowed . . . Stevens to remove . . . Sprott from class multiple times per week". (Doc. 33, at ¶ 40, 134). Puskala "permitted" Stevens to "repeatedly remove and retrieve, or excuse" Sprott from class; "repeatedly allowed [Sprott] to miss labs because he was 'meeting' with Stevens"; and whom Sprott told "that he was unable to attend labs because 'he needed to meet with Donnie'". *Id.* at ¶¶ 41, 135, 130. Hanlon "received, and subsequently dismissed, at least one complaint regarding [Stevens'] inappropriate behavior with students." *Id.* at ¶ 44. She and Patterson were also told by Dewire in December 2018 that "Stevens 'was creeping on one of [her] girlfriends when [they] were students [at Ottawa Hills.]' and that 'Donnie made a lot of people uncomfortable'." *Id.* ¶¶ 152-53. In 2019, after the news of Stevens' abuse became public, Dewire said to Hanlon:

> "'Pedophiles are among us and this is real.' 'It's our responsibility as adults to talk to kids and prevent this. The cycle of abuse needs to end. It's frustrating because I came to you and [Defendant Patterson] because I'm comfortable with both of you and I was hoping you might talk to [Defendant McMurray] about how this is a big issue and change needs to happen. It's frustrating because this was preventable, and I literally talked to you about this.'"

*Id.* at ¶ 156. The Amended Complaint further alleges Broadway "received, and subsequently dismissed, repeated complaints regarding [Stevens'] inappropriate behavior with students including the Plaintiffs" and was told of Dewire's statements and concerns by Hanlon or Patterson. *Id.* at ¶ 43. As to Hurst, the Amended Complaint asserts she "specifically complained to school officials that [Sprott's] performance in her class was suffering, and on information and

15

belief, expressed concerns regarding [Sprott's] relationship with" Stevens. *Id.* at ¶ 46[7]; *see also id.* at ¶ 129 (in early 2018, Sprott "began doing worse in school"; Hurst "discussed her concerns regarding" Sprott's "poor performance in English with Defendant Jackie Patterson"). Finally, the Amended Complaint asserts on information and belief, "on at least one occasion", Hurst expressed her concerns regarding [Sprott's] relationship with [Stevens] to the District, Board, and Administration Defendants. *Id.*

Defendants lean heavily on the guardianship arrangement and contend that adding that fact to the above facts means no reasonable teacher confronted with these facts in combination would suspect abuse. But the Amended Complaint alleges that Stevens was seen not just with the individual subject to that guardianship arrangement, but with other students both in the hallway at school during class time, as well as transporting students off campus during school hours. *See* Doc. 33, at ¶¶ 165-67, 172-73, 235. The Court finds, albeit not without careful thought and a bit of hesitation, that these allegations, combined with the individual allegations of each Teacher Defendant's observations are (just barely) sufficient to clear the relatively low bar of a plausibly pled claim that each Teacher Defendant "ha[d] reasonable cause to suspect based on facts that

---

7. Defendants correctly point out that the Sixth Circuit has held, in some contexts, that factual allegations pled "on information and belief" can be "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* and thus told us to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'Ship v. Flagstar Bank F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (finding bare allegations on information and belief that non-minority applicants were treated differently should be disregarded). But the Sixth Circuit has also held that some circumstances, a plaintiff may plead a fact upon information and belief. *See Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447-48 (6th Cir. 2014) ("It is true that pleading on information and belief may be permissible in certain circumstances. For example, sometimes a plaintiff may lack personal knowledge of a fact, but have 'sufficient data to justify interposing an allegation on the subject' or be required to 'rely on information furnished by others.') (citing Charles A. Wright and Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012)). Here, the Court finds that even excluding the facts asserted on information and belief, the claim survives dismissal.

would cause a reasonable person in a similar position to suspect, that a child . . . . has suffered or faces a threat of suffering" abuse. Ohio Rev. Code § 2151.421(A)(1)(a).[8]

The Court reiterates that at this stage of the proceedings it must take the facts in the light most favorable to Plaintiffs and determine whether they state a claim which is "plausible on its face." *Twombly*, 550 U.S. at 470. This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

This conclusion is not, as the Teacher Defendants argue, "find[ing] that a teacher can be civilly liable for breach of the mandatory reporter statute because a student leaves the classroom to be with a guardian, or is seen in his presence, or because a student reports that another student considers somebody to be creepy." (Doc. 71, at 19). Rather, it is to find that Plaintiffs have – albeit by the thinnest of margins – alleged sufficient facts to survive dismissal at the pleading stage for a claim under Ohio Revised Code § 2151.421(A). The Court emphasizes that the development of an evidentiary record may constrict what Plaintiffs are able to prove and may well support the Teacher Defendants' current position, but that is a question more properly and adequately addressed after depositions, and potentially upon a motion for summary judgment.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that the Teacher Defendants' Motion for Judgment on the Pleadings (Doc. 61) be, and the same hereby is, GRANTED IN PART as to the Fourteenth Amendment state created danger claim and DENIED IN PART as to the Ohio state law duty to report claim.

---

8. The Court also declines to find this claim waived as to Plaintiffs James Sprott and Benjamin Burke as Defendants urge. Although most of the individual allegations are specific to Timothy Sprott, the Court finds the Amended Complaint pleads a claim – albeit just barely – as to all three Plaintiffs. *See, e.g.*, Doc. 33, at ¶¶ 165-68, 172-73.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: July 3, 2024